No. 10-4490

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

PHILLIP WINDOM OFFILL, JR.,
*Defendant/Appellant.*

On Appeal from the United States District Court
for the Eastern District of Virginia
Alexandria Division (The Hon. Liam O'Grady)

## BRIEF OF THE APPELLANT

George Kostolampros
Ronald M. Jacobs
Stephen H. Swart
*Pro bono counsel*
Venable LLP
575 7th Street, NW
Washington, DC 20004
(202) 344-4000 (main)
gkostolampros@venable.com
rmjacobs@venable.com
shswart@venable.com

MICHAEL S. NACHMANOFF
Federal Public Defender

Kevin R. Brehm
Assistant Federal Public Defender
Lead Counsel for Appellant
1650 King Street, Suite 500
Alexandria, VA 22314
(703) 600-0800
Kevin_Brehm@fd.org

# TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Issues. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Mr. Offill's Legal Career and His Representation of
            Mr. Stocker. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

          1.    Mr. Offill's Background as an Experienced
                Securities Attorney. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

          2.    David Stocker Hires Mr. Offill for Legal
                Services. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    The Proceedings Below. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          1.    The Indictment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          2.    The Trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                a.    The Admission of Opinion Testimony
                      Regarding the Law and the Legal
                      Consequences of Mr. Offill's Conduct
                      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                b.    The Admission of Subsequent Act
                      Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                c.    Evidence of Multiple Conspiracies. . . . . . . . . . . 18

2. Mr. Offill's Sentencing. . . . . . . . . . . . . . . . . . . . . . . . 21

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

I.    The District Court Abused Its Discretion by Allowing the Government's Expert and Lay Witnesses to Testify as to the Law and the Legal Consequences of Mr. Offill's Conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    A.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    B.    The District Court Committed Reversible Error in Denying Mr. Offill's Motion to Preclude the Government's Experts from Testifying. . . . . . . . . . . . . . . . 25

    C.    The District Court Committed Plain Error in Allowing the Alleged Co-conspirators to Provide Opinion Testimony as to the Legal Consequences of Mr. Offill's Conduct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

II.    The District Court Abused Its Discretion by Admitting Recorded Conversations in 2006 Unrelated to the 2004 Transactions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

    A.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

    B.    The Subsequent Act Evidence Should Have Been Excluded as Extrinsic and Unreliable, Irrelevant and Prejudicial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

        1.    The Subsequent Act Evidence Was Extrinsic to the Charged Conspiracy. . . . . . . . . . . . . . . . . . . . . . 38

        2.    The Subsequent Act Evidence Was Improper Under Rule 404(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

III.    The District Court's Failure to Instruct on Multiple Conspiracies Was Reversible Error. . . . . . . . . . . . . . . . . . . . . . . . . 45

    A.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

    B.    There Was Sufficient Evidence to Support a Multiple Conspiracy Instruction. . . . . . . . . . . . . . . . . . . . . . 46

    C.    Mr. Offill was Prejudiced by the District Court's Refusal to Instruct the Jury on Multiple Conspiracies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

IV.    The Sentence Imposed by the District Court Was Unreasonable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

    A.    Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

    B.    The District Court Erred in Calculating the Guidelines Range by Misapplying the Gain Enhancement to Take Into Account David Stocker's Gains. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

    C.    Mr. Offill Was Entitled to a Two-Level Reduction in Offense Level for His Minor Role in the Conspiracy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

    D.    The District Court's Sentencing of Mr. Offill Was Disproportionate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

Request for Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

Cases

*Adalman v. Baker, Watts & Co.*, 807 F.2d 359 (4th Cir. 1986). . . . . . . . . 26, 29, 30

*Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195 (3d Cir. 2006). . . . . . . . . . . . 30

*Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200
    (4th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Gall v. United States*, 552 U.S. 38 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Kotteakos v. United States*, 328 U.S. 750 (1946). . . . . . . . . . . . . . . . . . . . . . 50, 51

*Marx & Co. v. Diner's Club, Inc.*, 550 F.2d 505 (2d Cir.),
    *cert. denied*, 434 U.S. 861 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 33

*Mattison v. Dallas Carrier Corp.*, 947 F.2d 95 (4th Cir. 1991). . . . . . . . . . . . . . 33

*Pinter v. Dahl*, 486 U.S. 622 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988) (en banc),
    *cert. denied*, 488 U.S. 1008 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Torres v. County of Oakland*, 758 F.2d 147 (6th Cir. 1985). . . . . . . . . . . . . . . . 36

*United States v. Abbas*, 74 F.3d 506 (4th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . 45

*United States v. Allen*, 491 F.3d 178 (4th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . 53

*United States v. Angle*, 254 F.3d 514 (4th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Barile*, 286 F.3d 749 (4th Cir. 2002). . . . . . . . . . . . . . . . . . . . . 24

*United States v. Betts*, 16 F.3d 748 (7th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . 42

*United States v. Bolden*, 325 F.3d 471 (4th Cir. 2003)....................... 55

*United States v. Booker*, 543 U.S. 220 (2005). ........................... 53

*United States v. Caputo*, 517 F.3d 935 (7th Cir. 2008). ................... 30

*United States v. Chin*, 83 F.3d 83 (4th Cir. 1996). ....................... 38

*United States v. Cole*, 491 F.2d 1276 (4th Cir. 1974)...................... 42

*United States v. Collado*, 975 F.2d 985 (3d Cir. 1992). ................... 55

*United States v. Conner*, 583 F.3d 1011 (7th Cir. 2009) ................... 42

*United States v. Curry*, 977 F.2d 1042 (7th Cir. 1992)..................... 46

*United States v. Dennis*, 917 F.2d 1031 (7th Cir. 1990)................. 46, 50

*United States v. Diaz-Ibarra*, 522 F.3d 343 (4th Cir. 2008)............... 53

*United States v. Espino*, 32 F.3d 253 (7th Cir. 1994)..................... 36

*United States v. Ford*, 88 F.3d 1350 (4th Cir. 1996). .................... 52

*United States v. Fowler*, 932 F.2d 306 (4th Cir. 1991).................... 45

*United States v. Griffin*, 324 F.3d 330 (5th Cir. 2003)................... 36

*United States v. Hadaway*, 681 F.2d 214 (4th Cir. 1982)................... 41

*United States v. Ham*, 998 F.2d 1247 (4th Cir. 1993). .................... 24

*United States v. Harris*, 39 F.3d 1262, 1267 (4th Cir. 1994).............. 46

*United States v. Hernandez*, 975 F.2d 1035 (4th Cir. 1992). ........... 41, 43

*United States vs. Hodge*, 354 F.3d 305 (4th Cir. 2003). .................. 40

*United States v. Howard*, 115 F.3d 1151 (4th Cir. 1997).................. 46

*United States v. Hunter*, 323 F.3d 1314 (11th Cir. 2003)... . . . . . . . . . . . . . . . 55, 56

*United States v. Ibarra*, 493 F.3d 526 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . 31

*United States v. Ivery*, 999 F.2d 1043 (6th Cir. 1993). . . . . . . . . . . . . . . . . . . . 58

*United States v. Jimenez*, 613 F.2d 1373 (5th Cir. 1980). . . . . . . . . . . . . . . . . . 39

*United States v. Johansen*, 56 F.3d 347 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . 52

*United States v. Kennedy*, 32 F.3d 876 (4th Cir. 1994). . . . . . . . . . . . . . . . 46, 52

*United States v. Lambert*, 995 F.2d 1006 (10th Cir. 1993). . . . . . . . . . . . . . . . 38

*United States v. Leavis*, 853 F.2d 215 (4th Cir. 1988). . . . . . . . . . . . . . . . . 46, 51

*United States v. Lewis*, 53 F.3d 29 (4th Cir. 1995)... . . . . . . . . . . . . . . . . . . . . 45

*United States v. Loayza*, 107 F.3d 257 (4th Cir. 1997)... . . . . . . . . . . . . . . . . . 24

*United States v. Lyles*, 593 F.2d 182 (2d Cir. 1979)... . . . . . . . . . . . . . . . . . . . 44

*United States v. McIver*, 470 F.3d 550 (4th Cir. 2006)... . . . . . . . . . . . . . . . . . 30

*United States v. McMillan*, 600 F.3d 434 (11th Cir. 2010). . . . . . . . . . . . . . . . 55

*United States v. Melia*, 691 F.2d 672 (4th Cir. 1982)... . . . . . . . . . . . . . . . . . . 39

*United States v. Mills*, 122 F.3d 346 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . 42

*United States v. Morrison*, 991 F.2d 112 (4th Cir. 1993)... . . . . . . . . . . . . . . . 45

*United States v. Nunez*, 432 F.3d 573 (4th Cir. 2005). . . . . . . . . . . . . . . . . . . . 51

*United States v. O'Connor*, 580 F.2d 38 (2d Cir. 1978)... . . . . . . . . . . . . . . . . 44

*United States v. Olano*, 507 U.S. 725 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007)... . . . . . . . . . . . . . . . . . 53

*United States v. Perkins*, 470 F.3d 150 (4th Cir. 2006). . . . . . . . . . . 24, 26, 30, 35

*United States v. Queen*, 132 F.3d 991 (4th Cir. 1997). . . . . . . . . . . . 37, 40, 41, 43

*United States v. Rawle*, 845 F.2d 1244 (4th Cir. 1988). . . . . . . . . . . . . . . . . . . . 37

*United States v. Reinhardt*, 347 F. Supp. 2d 222 (D. Md. 2004). . . . . . . . . . . . . 43

*United States v. Scop*, 846 F.2d 135 (2d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Siegel*, 536 F.3d 306 (4th Cir. 2008). . . . . . . . . . . . . . . . . . . . . 39

*United States v. Snyder*, 766 F.2d 167 (4th Cir. 1985). . . . . . . . . . . . . . . . . . . . . 45

*United States v. Thornton*, 554 F.3d 443 (4th Cir. 2009). . . . . . . . . . . . . . . . . . . 53

*United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . 46

*United States v. Treadwell*, 593 F.3d 990 (9th Cir. 2010). . . . . . . . . . . . . . . . . . 56

*United States v. Vann*, ___ F.3d _____, 2010 WL 3720413
    (4th Cir. Sept. 24, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*United States v. Wantuch*, 525 F.3d 505 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . 34

*United States vs. Weaver*, 282 F.3d 302 (4th Cir.),
    *cert denied*, 537 U.S. 847 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*United States v. White*, 875 F.2d 427 (4th Cir. 1989). . . . . . . . . . . . . . . . . . . . . 57

Federal Statutes, Regulations, and Rules

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3742. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

17 C.F.R. § 230.144A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17 C.F.R. § 230.501.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

17 C.F.R. § 230.504.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 27, 34

Fed. R. App. P. 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Evid. 201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Fed. R. Evid. 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 40, 44

Fed. R. Evid. 404. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18, 37, 38, 39, 40, 41

Fed. R. Evid. 701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 33, 34, 35

Fed. R. Evid. 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 26, 33

Fed. R. Evid. 704. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 26, 29, 31

## State Statutes, Regulations, and Rules

7 Tex. Admin. Code § 109.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

7 Tex. Admin. Code § 109.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

7 Tex. Admin. Code § 139.14. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 28

7 Tex. Admin. Code § 139.16. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7 Tex. Admin. Code § 139.19. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 28, 35

30 Tex. Reg. 3,987-88 (July 8, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

## United States Sentencing Guidelines

U.S.S.G. § 1B1.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

U.S.S.G. § 2B1.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

U.S.S.G. § 3B1.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57, 58

U.S.S.G. Ch. 5, Pt. A (sentencing table). . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

## Other Authorities

Salzburg, Federal Rules of Evidence Manual. . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Weinstein's Federal Evidence (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

No. 10-4490

────────────

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

────────────

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

PHILLIP WINDOM OFFILL, JR.,
*Defendant/Appellant*.

────────────

On Appeal from the United States District Court
for the Eastern District of Virginia
Alexandria Division (The Hon. Liam O'Grady)

────────────

BRIEF OF THE APPELLANT

────────────

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this federal criminal case pursuant to

18 U.S.C. § 3231. That court entered the judgment of conviction and sentence on

April 23, 2010. J.A. 2557; *see* J.A. 2570 (amended judgment). Phillip Windom

Offill, Jr., timely filed his notice of appeal on April 30, 2010. J.A. 2583; *see* Fed. R.

App. P. 4(b)(1), (b)(6). Therefore, this Court has jurisdiction over this appeal

pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

1

## STATEMENT OF THE ISSUES

I.     Whether the district court committed reversible error by allowing the government's expert and lay witnesses to testify both about the meaning of the securities laws and regulations at issue in the case and to provide their opinions as to the legal consequences of Mr. Offill's conduct, which included their opinions as to his intent.

II.     Whether the district court abused its discretion by admitting evidence of subsequent acts under Federal Rule of Evidence 404(b) when these acts both occurred two years after the actions for which Mr. Offill was being tried and were significantly different than Mr. Offill's conduct at issue in the case.

III.     Whether the district court committed reversible error by failing to instruct the jury on the defense's requested multiple conspiracy charge when there was evidence of several distinct conspiracies from the one charged in the indictment.

IV.     Whether the district court imposed a procedurally reasonable sentence when the court erred by improperly attributing losses to Mr. Offill's minimal conduct and by failing to apply a minor role adjustment to Mr. Offill's sentence.

## STATEMENT OF THE CASE

On January 28, 2010, following a ten-day trial in the United States District Court for the Eastern District of Virginia, a jury found Defendant-Appellant Phillip

W. Offill, Jr., guilty of one count of conspiracy to commit securities registration violations, securities fraud, and wire fraud, and nine counts of wire fraud. J.A. 2358-2360. On April 23, 2010, the district court sentenced Mr. Offill to 96 months imprisonment, followed by three years of supervised release, and ordered him to pay $157,610 in restitution. J.A. 2551-2552. Mr. Offill now appeals his conviction and sentence.

At trial, the government relied on the testimony of two securities law experts, as well as the testimony of several alleged co-conspirators, to testify as to the law and the legal consequences of Mr. Offill's conduct. *E.g.*, J.A. 410, 548, 2149-2152. On appeal, Mr. Offill contends that the admission of this expert and lay witness testimony regarding the law and the legal consequences of Mr. Offill's conduct usurped the district court's role of instructing the jury on the law and the role of the jury in determining guilt. These errors, compounded by the admission of conversations that occurred more than two years after the charged conduct and the court's unreasonable enhancement of Mr. Offill's sentence, tainted the proceedings, requiring reversal because Mr. Offill was not given a fair trial.

## STATEMENT OF FACTS

Phillip Offill, an experienced securities attorney, was tried for his purported role in a conspiracy to manipulate stock in a "pump and dump." J.A. 20.

3

Specifically, the government alleged that Mr. Offill conspired with his client, David Stocker, and several others to devise a scheme to evade the federal securities registration requirements and to manipulate the price of those shares. J.A. 26-31. The alleged co-conspirators then made millions in selling the shares they owned. *Id.* Mr. Offill did not profit from selling any shares; rather, he was simply paid for his legal services. J.A. 1942-1943. At trial, Mr. Offill contended that he acted in good faith in providing legal advice to Mr. Stocker. *Id.*

A.     <u>Mr. Offill's Legal Career and His Representation of Mr. Stocker</u>

     1.     <u>Mr. Offill's Background as an Experienced Securities Attorney</u>

Mr. Offill's career as an attorney spanned over twenty years across the public and private sectors. Mr. Offill began his legal career as an attorney at the Oklahoma Department of Securities in 1983, leaving in 1985 as that agency's Chief Counsel. J.A. 1822. Mr. Offill then began employment in the Enforcement Division of the United States Securities and Exchange Commission ("SEC" or "Commission") in Fort Worth, Texas. J.A. 1822-1823. Starting as a staff attorney, he was promoted to trial counsel and then to senior trial counsel, the title he held when he left for private practice in November 1999. *Id.* While at the SEC, Mr. Offill handled litigation of various matters for the Commission. J.A. 1823.

After sixteen years in public service, Mr. Offill began work with Krage & Janvey, L.L.P., a securities boutique firm. J.A. 1823. In January 2003, Mr. Offill left Krage & Janvey when Don Godwin invited him to join Godwin Gruber, P.C., and chair its securities practice. J.A. 1823-1825. Mr. Offill was offered the position because of his impressive knowledge of securities regulations. J.A. 1250-1252.

Along with his experience as a securities practitioner, Mr. Offill also taught courses on capital markets, securities law, and broker-dealers for the Dedham School of Law at Southern Methodist University, and spent ten years teaching the Legal Environment of Business course for the masters degree program at the University of Texas. J.A. 1826-1827.

### 2. David Stocker Hires Mr. Offill for Legal Services

Mr. Stocker was an attorney practicing in Phoenix, Arizona, whose practice involved writing opinion letters to stock transfer agents on behalf of small public companies, known as "penny stock" companies. J.A. 407-408. Mr. Offill first met Mr. Stocker in 2003. J.A. 1927-1928. Mr. Stocker had created the paperwork for a transaction involving Mark White, a client of Mr. Offill's. J.A. 424. The SEC subpoenaed Mr. White to testify about the transaction, and Mr. White offered to pay for Mr. Offill to represent Mr. Stocker when the SEC contacted him. *Id.* Although Mr. Offill met with Mr. Stocker once – on the afternoon before Mr. Stocker's appearance to prepare for the testimony – Mr. Offill did not attend the actual

testimony; instead, an associate from Godwin Gruber appeared with Mr. Stocker. J.A. 424-425.

In April 2004, because of Mr. Offill's expertise in securities law, Mr. Stocker engaged Mr. Offill to provide advice regarding securities issuances. J.A. 429. Typically, Mr. Stocker received cash and securities from the penny stock companies he represented as his compensation for arranging their share issuances and writing opinion letters to transfer agents. J.A. 1929. Mr. Stocker was concerned about the securities he received in these deals and wanted to be certain he was protected legally. J.A. 433, 1929.

Initially, Mr. Stocker asked Mr. Offill to provide comments on Mr. Stocker's form subscription agreement and opinion letter. J.A. 433. Prior to retaining Mr. Offill, Mr. Stocker relied on SEC Rule 504 of Regulation D,[1] an exemption to the registration requirements of the securities laws, and also on Texas Rule 109.3,[2] to

---

[1]  17 C.F.R. § 230.504 (2009). Under the Securities Act of 1933, any offer to sell securities must either be registered with the SEC or meet an exemption. Regulation D ("Reg D") contains three rules that provide exemptions from the registration requirements, allowing some companies to offer and sell their securities without having to register the securities with the SEC. Rule 504 permits the initial issuance of shares from the issuer according to state law exemptions, so long as the sale is to an "accredited investor." An accredited investor is defined in SEC Rule 501 and includes a person with net worth of at least $1,000,000, as well as any business in which all equity holders are accredited investors. 17 C.F.R. § 230.501.

[2]  Currently codified in relevant part at 7 Tex. Admin. Code § 109.4. 30 Tex. (continued...)

conclude that stock was freely tradeable. J.A. 414. Mr. Offill sent his suggestions via an e-mail dated April 15, 2004 ("April 15 e-mail"). Gov't Exh.16, J.A. 2743-2745; J.A. 434-436. Mr. Offill explained to Mr. Stocker that Texas law provided exemptions for sales to accredited investors under Rules 139.19 (business entities) and 139.16 (individuals). He then explained that Texas law allowed an accredited investor to resell its shares within twelve months of receiving them if the investor experienced a material change in circumstances. J.A. 436, 2744. Mr. Offill offered suggested language to address such a material change in circumstances. J.A. 437, 1937-1938.

Mr. Offill also advised Mr. Stocker on who could legally serve as an accredited investor. J.A. 452, 1938-1939. For instance, Mr. Offill advised Mr. Stocker that Mr. White, by then a former client of Mr. Offill's, was not an accredited investor because Mr. White was about to lose his brokerage firm and thus did not meet the net worth requirements under the securities rules. J.A. 1938-1939. Mr. Stocker then asked Mr.

---

[2] (...continued)
Reg. 3,987-88 (July 8, 2005). Former Texas Rule 109.3, which was the operative rule at the time of the alleged conduct, allowed any holder of securities to sell those securities either to a "qualified institutional buyer" or "accredited investor," if the purchaser is acting for its own account. 7 Tex. Admin. Code § 109.4(b). The Texas Code uses the federal securities laws definitions of these two terms. Thus, a qualified institutional buyer is generally a large financial or investment institution that owns at least $100 million in securities of entities that are not affiliates of the issuer. Rule 144A, 17 C.F.R. § 230.144A(a).

Offill to act as the accredited investor. J.A. 452, 1939. Because he wanted to maintain a good relationship with Mr. Stocker, who was a new client at the time, Mr. Offill agreed to be the initial accredited investor. J.A. 1939. By doing so, Mr. Offill did not think he was doing anything illegal or unlawful. J.A. 1942-1943.

From April 2004 through August 5, 2004, Mr. Offill signed subscription agreements, proposed by Mr. Stocker, as an accredited investor in at the nine transactions at issue in this action. These included share issuances from:

(1)     Emerging Holdings, Inc. (one issuance), J.A. 481;

(2)     Massclick, Inc. (one issuance), J.A. 533-534;

(3)     China Score, Inc. (one issuance), J.A. 603, 606;

(4)     Ecogate, Inc. (one issuance), J.A. 621-623;

(5)     Media International Concepts, Inc. (one issuance), J.A. 626-627;

(6)     Vanquish Productions, Inc. (one issuance), J.A. 630-631;

(7)     Custom Designed Compressor Systems, Inc. (one issuance), J.A. 639-641;

(8)     Auction Mills, Inc. (two issuances) J.A. 634-636; and

(9)     AVL Global, Inc. (two issuances), J.A. 645-647.

At the time he signed the subscription agreements, Mr. Offill provided Mr. Stocker with a written consent to transfer the stock and a blank stock power on behalf of the initial accredited investor. J.A. 457, 2587-2588; Mr. Stocker paid Mr. Offill

$2,500 for each transaction, which Mr. Stocker paid by a check made out to Mr. Offill's firm. *E.g.*, J.A. 1942-1943, 2600. Mr. Offill typically had no interaction with the second-tier investors and did not know who they were. J.A. 1963.

Mr. Stocker remained a client of Mr. Offill's, and of Mr. Offill's law firm, from 2004 to 2006. J.A. 1944. During that period, Godwin Gruber and Mr. Offill represented Mr. Stocker concerning regulatory inquiries from the Texas State Securities Board and the SEC and in various other matters that included estate planning and creditor's rights issues related to a bankruptcy filing. J.A. 1944-1945.

B. The Proceedings Below

1. The Indictment

In March 2009, nearly five years after the nine share issuances at issue, the grand jury returned a ten-count indictment against Mr. Offill, alleging one count of conspiracy to commit securities registration violations, securities fraud, and wire fraud, and nine counts of wire fraud arising from his role in the stock issuances in 2004. J.A. 20-54. The government alleged that Mr. Offill and Mr. Stocker drafted fraudulent opinion letters and stock subscription agreements for stock issuance transactions to give the appearance of compliance with Rule 504. Further, the government alleged that in the subscription agreements Mr. Offill signed as an accredited investor, he falsely claimed that the entity under his control was purchasing the stock with investment intent, when in reality he planned to transfer

9

those shares to co-conspirators within days for sale to the general investing public.
*Id.*

The government alleged that the co-conspirators, whom Mr. Offill had little or no interaction with at the time of issuance of the shares, "pumped up" the share prices through spam e-mails and press releases containing false statements about the companies. The alleged conspirators (not including Mr. Offill) then "dumped" their shares, selling them at a substantial profit. *Id.*

### 2. The Trial

As the government conceded in its closing argument, the biggest issue in this case is what Mr. Offill knew – specifically, "did he knowingly join the conspiracy, knowing of its illegal purposes, and willfully intend to violate the securities laws?" J.A. 2192. The government, however, presented no direct evidence that Mr. Offill had actual knowledge of the alleged conspiracy – the pump and dump – at the time it occurred. Rather, the government presented expert and lay witness testimony regarding the law and the legal consequences of Mr. Offill's conduct. The government also presented subsequent act evidence to attempt to prove that Mr. Offill knew of the alleged pump and dump in 2004, even though the subsequent act evidence concerned different acts taken between 2006 and 2007. Finally, although the government's witnesses testified to numerous conspiracies and criminal acts, the district court refused to instruct the jury on multiple conspiracies.

a. The Admission of Opinion Testimony Regarding the Law and the Legal Consequences of Mr. Offill's Conduct

Each of the government's first four witnesses testified about the intricate contours of federal and Texas securities laws and opined on the legal consequences of Mr. Offill's conduct. Mr. Offill objected to this opinion testimony in advance of trial. J.A. 205-216, 222-235.

Although the district court denied Mr. Offill's motion, it precluded the government's experts from testifying that his conduct constituted illegal manipulation, that a party acted unlawfully, or that an individual or entity was liable for violating the securities laws. J.A. 244, 268-269. Further, the court precluded the government from asking these witnesses any question regarding Mr. Offill's intent. J.A. 268-269. The district court noted that under applicable precedent, courts have allowed "experts properly qualified to talk about the functioning of the securities markets, the ordinary practices and procedures, the rationale behind these policies and procedures and the regulations that apply." J.A. 269. The district court, however, warned that "hypotheticals can at times get close to the line if, obviously, tailored specifically to the conduct here. . . . It's obviously a hot button item and will be looked at closely by any appellate court if there is a conviction in this case. I want you to be mindful of that." *Id.*

Notwithstanding the court's instructions, the government's experts testified explicitly about the meaning of the law, the legal consequences of Mr. Offill's conduct, and even his intent. The government's experts – Steven Thel, a securities law professor at Fordham University, and Denise Crawford, Commissioner of the Texas State Securities Board – provided bookends to the government's case at trial, serving as the government's first and last two witnesses.

For instance, Professor Thel testified as to the legal meaning of an underwriter. Specifically, Professor Thel testified that:

> Q.    Do you have a definition of an underwriter?
>
> A.    Yes. An underwriter is a person who either – There are two broad groups of people, people who buy from the company with a view to selling it to the public, buy the securities with a view to selling it to the public . . . . So, an underwriter is any person who buys from the company with a view to distributing it to the public or who helps the public, I am sorry, helps the company distribute it, that is sell it to the public.
>
> Q.  I think you gave an example of an investment bank being an underwriter. Does it have to be an entity or can [an underwriter] be an individual?
>
> A. No. Anyone who does what I just described would be an underwriter. So, if I went to a company and told them I had good prospects for them, people who would be interested in selling their stock and they should get in touch with these people, and I introduced the company to those people, I would be an underwriter.

If I bought the company's stock and then planning to sell it the next day, I'm an underwriter.

An underwriter includes a huge number of people, not just these investment banks. It's the underwriter is the intermediary between the company and the ultimate public investor.

J.A. 331-332. Further, Professor Thel testified regarding Mr. Offill's intent via a hypothetical question sculpted precisely to Mr. Offill's conduct:

Q:     What if the investor doesn't pay, but instead has a promissory note which he intends to pass on to the next person who he transfers or sells his stock to?

A:     Well, I want to focus on the precise details. That would either be treated as nonetheless a sale, that paying with a promissory note is a sale. Like if I buy my car with a promissory note.

If he had no intention of paying the promissory note, and this were a structure to get around the statute, *I think the situation becomes worse. In the situation in which that first so-called purchaser isn't really buying it, what he is really doing is offering the security for sale to the second intermediary.* And the person is an underwriter if they buy with a view to distribution or offer for the issuer in connection with the distribution.

So, that use of the promissory note, if anything, makes this underwriter status more clear.

J.A. 2146-2147 (emphasis added).

Commissioner Crawford also similarly testified about the requirements of the securities laws and Mr. Offill's intent. Specifically, Commissioner Crawford testified as follows:

> Q: Could a Texas accredited investor rely on 139.14 to transfer the shares to another entity or individual for free so that other individual could sell those shares at a profit?
>
> A. No. *In fact, we would call that a scheme to evade the registration requirements if that were done.* The idea is that you are not supposed to be selling to get the shares out into the hands of others who are not supposed to have those shares unless they are registered.

J.A. 2180 (emphasis added).

The government then offered the testimony of several of Mr. Offill's alleged co-conspirators, starting with the purported ring-leader, David Stocker. As set forth below, Mr. Stocker opined on the securities laws and the legal consequences of Mr. Offill's conduct:

> Q. . . . What is an underwriter?
>
> A. An underwriter is a person or company that holds shares and sells them to, and sells them to the public.
>
> Q. If there is an underwriter involved in a transaction, what requirements does that trigger?
>
> A. The registration requirements, that the public offering be registered with the SEC.
>
> Q. Now, as an attorney for these transactions, were you an underwriter?

14

A.     Yes.

Q.     Were other individuals - At the time, did you understand whether other individuals involved in these transactions were underwriters?

A.     Yes.

Q.     *For example, who else would have been underwriters?*

A.     *Mr. Offill, the promoters, anybody who had stock.*

J.A. 445 (emphasis added).

Similarly, Mark Lindberg, another alleged co-conspirator, testified that:

Q.     What is your understanding of an underwriter?

A.     An underwriter is an individual or firm that is given the task of delivering stock into the market.  A financial firm that receives cash and a stock and becomes an issuing, an issuer's agent.

Q.     Would you apply that term to your role when you acted as an initial investor in these Texas 504 deals?

A.     I would essentially assume that, yeah, the initial subscriber is essentially an underwriter.

          . . .

Q.     Do you know individuals other than yourself who acted as underwriters in Mr. Stocker's deals?

A.     Yeah, there were multiple people that were the initial recipients of Texas 504 shares.

> Q.    Do you know whether the defendant acted as an initial investor?
>
> A.    In a Texas 504?
>
> Q.    Yes.
>
> A.    Yes.

J.A. 797-798. Like Mr. Stocker and the government's expert witnesses, Mr. Lindberg testified as to the meaning of an underwriter and as to whether Mr. Offill acted as an underwriter by acting as the initial accredited investor in several transactions.

## b.    The Admission of Subsequent Act Evidence

In an attempt to bolster its case against Mr. Offill, the government introduced, over objection, evidence relating to a transaction that occurred in late 2006 and early 2007, more than two years after the conduct charged in the indictment.  J.A. 55-66, 135-162, 163-193.  The evidence admitted at trial included tape recordings and testimony regarding Mr. Offill's conversations with government cooperators Stephen Luscko and Kenneth Owen about spamming operations and manipulative trading relating to Clearvision International, Inc. ("Clearvision"), a company Mr. Offill represented in 2006 and 2007.[3]

---

[3]  Testimony regarding Clearvision was introduced at trial at J.A. 1423-1461 (Steve Luscko) and J.A. 1543, 1550-1584, 1598-1615 (Ken Owen).  Further, the tape recordings were admitted into evidence as follows: Gov't Exh. 11-1R, J.A. 1447; Gov't Exh.11-2R, J.A. 1447; Gov't Exh 11-4R, J.A. 1599; Gov't Exh 11-5R, J.A.
(continued...)

Mr. Luscko, an alleged co-conspirator and participant in the Emerging Holdings, MassClick and China Score issuances, was reintroduced to Mr. Offill in December 2006, the first time they had met in person. J.A. 561-566, 1402, 1407, 1409-1412. In recordings of conversations with Mr. Offill that took place between December of 2006 and January of 2007, Mr. Luscko told Mr. Offill that he wanted to "do a deal" that involved reconstituting shell companies. J.A. 1410-1412, 2739. Mr. Owen was retained as the stock promoter and prepared mailings to potential investors and began purchasing stock in the open market to control the float. J.A. 1562-1568. Eventually, the government confronted Mr. Owen with its undercover operation, and Mr. Owen also agreed to tape record his conversations with Mr. Offill. J.A. 1567-1568.

In response to the defense's motion *in limine* to exclude this evidence, the government alleged that some of these recorded conversations were intrinsic to the charged crimes because Mr. Offill referenced spamming operations in the 2004 deals. Further, the government argued that the remaining recordings were qualified as

---

[3] (...continued)
1450; Gov't Exh 11-6R, J.A. 1451; Gov't Exh 11-7R, J.A. 1604; Gov't Exh 11-8R, J.A. 1452-1453; and Gov't Exh 11-9R, J.A. 1458. Transcripts of the recordings played at trial can be found as follows: Gov't Exh. 11-1T, J.A. 2610-2645; Gov't Exh. 11-2T, J.A. 2646-2656; Gov't Exh 11-4T, J.A. 2657-2672; Gov't Exh 11-5T, J.A. 2673-2679; Gov't Exh 11-6T, J.A. 2680-2683; Gov't Exh 11-7T, J.A. 2684-2711; Gov't Exh 11-8T, J.A. 2711-2729; and Gov't Exh 11-9T, J.A. 2730-2739.

proper 404(b) evidence because the recordings implicated Mr. Offill's knowledge of spamming and manipulative stock-trading practices. J.A. 126-131. At trial, the government admitted these recordings under Rule 404(b) as well as intrinsic evidence as admissions over the repeated objection of defense counsel. J.A. 55-66, 135-162, 163-193.

### c.    Evidence of Multiple Conspiracies

At trial, along with the subsequent act evidence relating to Clearvision, the government presented evidence establishing that there were multiple conspiracies at different times that involved different co-conspirators. Based on the evidence of multiple conspiracies, Mr. Offill requested that the district court give the following instruction on multiple conspiracies to the jury:

> PARTICIPANT IN A CONSPIRACY NOT CHARGED
> (Theory of the Defense)
>
> Proof of several separate conspiracies is not proof of the single, overall conspiracy charged in the indictment, unless one of the several conspiracies which is proved is the single conspiracy charged in the indictment.
>
> If you find that the defendant was not a member of the conspiracy charged, then you must find the defendant not guilty, even though the defendant may have been a member of some other conspiracy. This is because proof that a defendant was a member of some other conspiracy is not enough to convict.
>
> In other words, to find a defendant guilty you must unanimously find that such defendant was a member of the

> conspiracy charged in the indictment and not a member of
> some other separate conspiracy.

J.A. 221A-221D.  Notwithstanding the complicated series of transactions involving different sets of actors and activities, the district court refused to give that instruction, finding that there was insufficient evidence in the record to establish multiple conspiracies.  J.A. 2036.  The record, however, was replete with evidence in which the jury could find that there were separate conspiracies.

First, as to the transactions charged in the indictment, there were three separate and distinct groups of individuals – (1) the Greg Neu/Steve Luscko transactions involving the Emerging Holdings, MassClick and China Score issuances; (2) the Shane Reynolds/Ryan Mullholand transactions involving the Ecogate, Media International, Vanquish Productions, Auction Mills and Custom Designed Compressor Systems issuances; and (3) the Peter and N. Tyler Fisher transactions involving AVL Global, Inc. issuances.  In fact, Mr. Stocker, the government's key witness against Mr. Offill, testified that the AVL Global transactions were "separate from Luscko, Neu and the Ryan Reynolds and Shane Mullholand [transactions] . . . ."  J.A. 643.  Additionally, the Neu/Luscko transactions employed Justin Medlin, a/k/a "the Kid," as the spammer, J.A. 878-879; while in the Reynolds/Mulholland transactions Mr. Mullholand organized the promotions, J.A. 618; and the Fisher/ AVL Global transactions employed Harj Manhas to promote that stock, J.A. 643-644.

19

The government also presented evidence of several other conspiracies that were completely unconnected to Mr. Offill. Mr. Stocker testified that from 2003 through early 2004 he arranged at least fifteen securities transactions with Michael Paloma, a promoter. J.A. 412-413. Along with his criminal activity with Mr. Paloma, Mr. Stocker engaged in numerous other criminal endeavors that included a Ponzi scheme, J.A. 416-417, and corporate hijackings,[4] J.A. 417-418. The Ponzi scheme occurred in 2002 or 2003, well before the transactions alleged in the indictment, and the hijacking occurred in 2005, well after the relevant period. J.A. 416-418.

Along with Mr. Stocker's criminal activities, the government also presented evidence of the criminal activities of its other witnesses in which Mr. Offill was not involved. For instance, Mr. Lindberg testified that he pled guilty to securities fraud and wire fraud concerning shares of companies issued in 2005 or 2006. J.A. 777-778. Mr. Neu testified as to his role in a pump and dump involving Mr. Stocker and Mr. Paloma. J.A. 882-885. Further, Mr. Luscko testified about his involvement with Mr. Neu, Kevin Leutje and Mr. Medlin in promoting stocks on the internet through spam e-mails. J.A. 1324-1325.

---

[4] A corporate hijacking is incorporating a company in the name of another existing, but abandoned, company and then filing fraudulent paperwork to take over the abandoned company.

On January 28, 2010, the jury returned a verdict of guilty against Mr. Offill on all ten counts of the indictment. J.A. 2358-2360. Mr. Offill timely filed motions on February 11, 2010, for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c), J.A. 2373-2396, and for a new trial under Federal Rule of Criminal Procedure 33, J.A. 2397-2413. The court denied both motions at Mr. Offill's sentencing hearing on April 23, 2010. J.A. 2541.

### 2. Mr. Offill's Sentencing

At the sentencing hearing, the district court sentenced Mr. Offill to 60 months on the conspiracy count, and to 96 months for each count of wire fraud, all counts to run concurrently. J.A. 2551. The court found that the amount of loss was in excess of $1 million, attributing Mr. Stocker's substantial gains to Mr. Offill's compensation relating to his legal work for Mr. Stocker. J.A. 2543. The court further found that Mr. Offill was not entitled to a decrease in offense level for minimal or minor participation, J.A. 2543-2544, despite the testimony of Mr. Offill's alleged co-conspirators that Mr. Offill did not participate in any spamming activities or in the pump and dump, J.A. 951, 1473-1476, 1758. In fact, many of the alleged co-conspirators did not even know Mr. Offill – Mr. Luscko testified to having a single conversation with Mr. Offill in 2004, J.A.1475-1476, and Mr. Neu, Mr. Medlin, Steve Hasenfus, Brian Brunette and Tyson Su testified to never speaking or meeting with Mr. Offill. J.A. 939, 971, 1010-1011, 1035-1036, 1064, 1815. Instead,

the district court increased the offense level by two for obstruction of justice. J.A.
2544. Based on these factors, the court found that the base offense level was 35,
resulting in a suggested sentence under the Sentencing Guidelines of 168 to 210
months. *Id.* The court then imposed a sentence of ninety-six months, which created
a gross disparity between Mr. Offill's sentence (eight years) to that of anyone else
involved (five years or less). J.A. 2550-2551.

## SUMMARY OF ARGUMENT

Mr. Offill's trial in the district court was fraught with significant errors,
causing substantial prejudice to Mr. Offill and fatally tainting the jury's verdict; as
such, this Court should reverse the judgment of the trial court and remand for a new
trial.

First, in contravention of the district court's orders, the government produced
two expert witnesses and several co-conspirators who instructed the jury on the
applicable legal standards and testified as to the consequences of Mr. Offill's
conduct, as well as his intent. Such opinion testimony was improper under Federal
Rules of Evidence 701, 702 and 704, and was reversible error (Part I).

Second, the district court erred by admitting evidence relating to the
Clearvision transaction from late 2006 and early 2007 – more than two years removed
from the charged transactions. This evidence, by its very nature, was not intrinsic to

the charged crimes.  Additionally, it had no relevance to Mr. Offill's knowledge of the spamming operations in 2004.  Furthermore, any probative value of the admission of these subsequent acts was outweighed by its prejudicial effect by diverting the jury's attention from the evidence relating to the charged conspiracy.  As such, the testimony should have been excluded (Part II).

Third, the district court's failure to instruct the jury on multiple conspiracies, despite evidence at trial concerning eight different groups of individuals and unrelated transactions (Part III), as well as its calculation of the losses attributable to Mr. Offill and its unreasonable decision to not adjust his offense level for a minimal or minor participant role at sentencing (Part IV), constituted further reversible errors.

These significant errors infected each part of the trial proceedings:  although each error caused Mr. Offill substantial prejudice in its own right, cumulatively they denied Mr. Offill a fair trial.  As such, this Court should reverse the judgment of the district court and remand for a new trial.  In the alternative, this Court should remand the case to the district court for re-sentencing.

# ARGUMENT

I.    THE DISTRICT COURT ABUSED ITS DISCRETION BY ALLOWING THE GOVERNMENT'S EXPERT AND LAY WITNESSES TO TESTIFY AS TO THE LAW AND THE LEGAL CONSEQUENCES OF MR. OFFILL'S CONDUCT

### A.    Standard of Review

This Court reviews evidentiary rulings for abuse of discretion if a party timely objected, and for plain error if the party did not. *United States v. Perkins*, 470 F.3d 150, 155 (4th Cir. 2006). A district court abuses its discretion when it acts arbitrarily or irrationally. *United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993). By definition, a court acts arbitrarily or irrationally when it applies erroneous legal principles. *United States v. Barile*, 286 F.3d 749, 753 (4th Cir. 2002). If admission of evidence is found to be an abuse of discretion, the appellate court "engages in a specific analysis of the district court record – a so-called 'harmless error' inquiry – to determine whether the error was prejudicial." *United States v. Loayza*, 107 F.3d 257, 262 (4th Cir. 1997) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). Under the harmless error analysis, the government bears the burden of persuading the appellate court that the evidence did not prejudice the defendant. *See id.* In order to demonstrate plain error, an appellant "must show that an error occurred, that the error was plain, and that the error affected [his] substantial rights." *United States v. Angle*, 254 F.3d 514, 517 (4th Cir. 2001).

B.  The District Committed Reversible Error in Denying Mr. Offill's
Motion to Preclude the Government's Experts from Testifying

Although the district court denied the defense's motion *in limine* to preclude the government experts from testifying as to legal conclusions and Mr. Offill's conduct, the court precluded the government's experts from opining that conduct was illegal manipulation, that a party acted unlawfully, or that an individual or entity is liable, and precluded the government from asking any question regarding Mr. Offill's intent. J.A. 268-269. Further, the district court warned that "hypotheticals can get close to the line if, obviously, tailored specifically to the conduct here. . . . It's obviously a hot button item and will be looked at closely by any appellate court if there is a conviction in this case. I want you to be mindful of that." *Id.*

At trial, the government's experts went far across the line of permissible testimony the district court laid down. First, the government's experts testified as true experts on the law – testifying as to the legal requirements under the securities laws. Second, the government's experts testified as to the legal consequences of Mr. Offill's conduct when the government posed hypotheticals that were specifically tailored to Mr. Offill's conduct. Finally, the government's experts testified about Mr. Offill's intent – using "hypothetical" situations that were completely on point with the exact facts of the case – even though the government's experts had no involvement with Mr. Offill at the time of the conduct at issue.

25

It is hornbook law that "expert testimony is not admissible to inform the finder of fact as to the law that will be instructed to apply to the facts on deciding the case. That is a matter reserved exclusively for the trial Judge." Weinstein's Federal Evidence § 702.03[3] (2010); *see also Adalman v. Baker, Watts & Co.*, 807 F.2d 359 (4th Cir. 1986) (noting that "Rule 704(a) . . . should not, and does not, permit the expert witness to usurp the province of the judge"), *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988). Under Federal Rule of Evidence 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The question as to whether an expert offers impermissible legal opinion testimony is "whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *Perkins*, 470 F.3d at 158 (internal quotations omitted). More specifically, the prohibition on an expert's explanation of legal principles "precludes an expert from testifying in the language of statutes, regulations, or other legal standards that are at the heart of the case if that language has a separate and distinct, and specialized

meaning in the law different from its meaning in the vernacular." Weinstein's Federal Evidence § 702.03[3].

Here, the government's experts testified in the language of the statutes and regulations at issue. Professor Thel opined on such comprehensive legal standards as when a security is required to be registered, J.A. 324-325, 329; who qualifies as an "underwriter" and what intent is required, J.A. 331-333, 2137-2140; and how an issuer qualifies for an exemption to registration under Rule 504 of Regulation D, J.A. 334-338. Further, Professor Thel testified as to the legal consequences of Mr. Offill's conduct when he testified that:

> Q: What if the investor doesn't pay, but instead has a promissory note which he intends to pass on to the next person who he transfers or sells his stock to?
>
> A: Well, I want to focus on the precise details. That would either be treated as nonetheless a sale, that paying with a promissory note is a sale. Like if I buy my car with a promissory note.
>
> *If he had no intention of paying the promissory note, and this were a structure to get around the statute, I think the situation becomes worse.* In the situation in which that first so-called purchaser isn't really buying it, what he is really doing is offering the security for sale to the second intermediary. And the person is an underwriter if they buy with a view to distribution or offer for the issuer in connection with the distribution.
>
> So, that use of the promissory note, if anything, makes this underwriter status more clear.

J.A. 2146-2147 (emphasis added).

Commissioner Crawford likewise testified improperly about the legal requirements of the securities laws. Specifically, Commissioner Crawford testified as to the legal requirements under Texas Rules 139.19 and 139.14, whether spam e-mail would qualify as a "general announcement" under Rule 139.19, J.A. 378, 2180; when an investor who purchased stock under Rule 139.19 can sell those shares, J.A. 379-380; and how certain monies received in a sale by an accredited investor must be applied to maintain that Section's applicability, J.A. 380-381. This testimony was just as far-reaching, unfocused and unhelpful to the jury as that of Professor Thel. Its only relevance was to instruct the jury on the law – which is the exclusive province of the court.

Further, as did Professor Thel, Commissioner Crawford, by inference, testified as to the legal consequences of Mr. Offill's conduct as well as his mental state when presented with a hypothetical specifically tailored to Mr. Offill's conduct. Specifically, Commissioner Crawford testified as follows:

> Q:     Could a Texas accredited investor rely on 139.14 to transfer the shares to another entity or individual for free so that other individual could sell those shares at a profit?

> A.      No. *In fact, we would call that a scheme to evade the registration requirements if that were done.* The idea is that you are not supposed to be selling to get the shares out into the hands of others who are not supposed to have those shares unless they are registered.

28

J.A. 2180 (emphasis added). Commissioner Crawford's testimony improperly tracked the statutory language and improperly assessed the specific conduct at issue. Additionally, Commissioner Crawford's testimony that such a scheme would be called "a scheme to evade the registration requirements" is opinion testimony regarding Mr. Offill's intent that is prohibited by Federal Rule of Evidence 704(b).[5]

This Court has consistently held that expert testimony similar to the testimony here is improper. In *Adalman v. Baker, Watts & Co.*, this Court affirmed a trial court's decision to exclude expert testimony on the meaning and applicability of the federal securities laws. 807 F.2d at 368. This Court noted that

> under our system it is the responsibility – and the duty – of the court to state to the jury the meaning and applicability of the appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within the scope of the court's instruction as to the law.

*Id.* at 366. Further, this Court concluded that the expert witness could have testified about "'the step-by-step practices ordinarily followed by lawyers and corporations' in activities regulated by the securities laws." *Id.* at 367. However, the expert's

---

[5] That rule provides, "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." Fed. R. Evid. 704(b).

proposed testimony as to whether certain information was material was patently

improper because

> [f]rom beginning to end, it is obvious that [defendants]
> proffered [the] expert witness to testify in substantial part
> to the meaning and applicability of the securities laws to
> the transactions here, giving his expert opinion on the
> governing law. This flies squarely in the face of the
> precedent – and the logic of that precedent – set out in
> [*Marx & Co. v. Diner's Club, Inc.*, 550 F.2d 505 (2d Cir.
> 1977)].

*Id.* at 368.

Since *Adalman*, this Court has repeatedly reaffirmed the basic principle that

experts may not usurp the judge's and jury's rightful roles. *See, e.g.*, *United States

v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) ("[O]pinion testimony that states a legal

standard or draws a legal conclusion by applying law to the facts is generally

inadmissible."); *see Perkins*, 470 F.3d at 158 (noting that testimony with specific

legal terms "involves the use of terms with considerable legal baggage; such

testimony nearly always invades the province of the jury"). Other circuits have taken

a similar view, namely that experts cannot opine as to the meaning or applicability of

the governing law. *See, e.g.*, *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir.

2008) (affirming district court's decision to exclude expert testimony that would have

explained the statute and regulations under the Food, Drug and Cosmetic Act);

*Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 218-19 (3d Cir. 2006) (holding

that expert was permitted to testify as to general practices of the banking/securities industry because of experience as SEC counsel, and specifically noting that the expert did not testify as to what the law requires generally); *United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988) (holding that expert in securities fraud trial improperly "made no attempt to couch the opinion testimony at issue in even conclusory factual statements but drew directly upon the language of the statute and accompanying regulations"); *cf. United States v. Ibarra*, 493 F.3d 526, 532 (5th Cir. 2007) (agent's testimony that drug cartel would not entrust large shipment to person who didn't know what he was carrying was reversible error under Rule 704(b)).

The prejudice of the government's improper expert witness testimony to Mr. Offill is manifest. The government made clear in its closing arguments that the jury had no choice but to follow its experts' instructions: "Now, to the extent there is any dispute about the law, I want to talk about that briefly. *The government presented experts as to what the law was.* The defense presented the defendant." J.A. 2278 (emphasis added).[6] Further, in disputing Mr. Offill's contention that he believed that the transactions were legal, the government argued that

---

[6] In fact, as further prejudice to Mr. Offill, the district court specifically prevented Mr. Offill from testifying about the applicable legal standards, although the district court allowed Mr. Offill to testify as to his understanding of those legal standards. J.A. 1682.

Ladies and gentlemen, this is not just a matter of reasonable attorneys disagreeing about what the law is. The defendant claimed in his testimony that this scheme complies with the securities laws. *But consider that the only evidence in support of his position is his own testimony. Ask yourself what's more reliable, his testimony or the testimony of the experts in this case?*

Now, remember, the Government has the burden of proof, and the defendant doesn't have to call any witnesses to support his position. But if this was truly a matter of reasonable attorneys disagreeing about what the law is, don't you think the defendant could have found at least one reasonable attorney to come in and testify about his plan? He didn't. It is an indication that the plan doesn't work.

J.A. 2201-2202 (emphasis added). Not only did the government's experts' testimony improperly testify as to the law and as to the legal consequences of Mr. Offill's conduct, but the government essentially told the jury that it need only find that it could determine guilt solely based on the fact that the transactions violated the registration provisions of the securities laws rather than on a finding that Mr. Offill conspired to violate securities registration provisions *and* conspired to manipulate the shares at issue in a pump and dump.

The cumulative effect of the government's improper expert testimony essentially wrested the obligation to instruct the jury from the trial court and told the jury how to decide this case. Taken together with the government's pervasive reference to its experts' improper testimony in closing arguments, this error cannot be considered harmless. It therefore requires reversal of Mr. Offill's conviction. *See*

*Specht v. Jensen*, 853 F.2d 805, 807-09 (10th Cir. 1988) (en banc) (remanding because of improper testimony of lawyer/witness about legality of searches), *cert. denied*, 488 U.S. 1008 (1989); *Marx & Co. v. Diners Club, Inc.*, 550 F.2d 505, 509-10 (2d Cir.) (error to admit opinion of securities regulation expert as to legal obligations of parties pursuant to contract), *cert. denied*, 434 U.S. 861 (1977).

C. The District Court Committed Plain Error in Allowing the Alleged Co-conspirators to Provide Opinion Testimony as to the Legal Consequences of Mr. Offill's Conduct

Federal Rule of Evidence 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Although Rule 701 allows lay witnesses to offer opinion testimony when the opinion would be helpful to the jury to comprehend a witness's testimony or to determine a fact in issue, this Court has cautioned that such testimony must not transgress the specific commands of subsections (b) and (c), and that courts "must be always mindful to guard against lay witness testimony when it involves 'meaningless assertions which amount to little more than choosing up sides.'" *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 110-11 (4th Cir. 1991) (quoting Fed.

R. Evid. 701 advisory committee's note). Accordingly, lay opinion testimony is inadmissible when the witness simply tells the trier how it should decide the case. *See United States v. Wantuch*, 525 F.3d 505, 512-14 (7th Cir. 2008) (holding that government informant's testimony about whether defendant thought his conduct was "legal" or that a transaction was "legitimate" was impermissible under Rule 701 because, even though properly based on the witness's perception, it was an unhelpful legal conclusion and merely amounted to "choosing up sides").

Here the testimony of alleged co-conspirators David Stocker and Mark Lindberg clearly violated Rule 701, as it was permeated with statements regarding the law and the legal consequences of Mr. Offill's conduct. Specifically, Mr. Stocker consistently testified that his conduct, and by inference Mr. Offill's conduct as an alleged co-conspirator, was "fraudulent," J.A. 410, 573; that it constituted "securities manipulation," J.A. 411; and that it was "illegal" J.A. 412. Both the questions asked to Mr. Stocker and the answers given by him were replete with language tracking the precise statutory or regulatory language of the federal and Texas state securities laws at issue.

Mr. Stocker testified that the securities were required to be registered under Section 5 of the Securities Act of 1933, J.A. 415-416, 431, 443, 548; that Mr. Offill was an "underwriter" under the securities laws, J.A. 498; that the transactions at issue did not comply with Rule 504 of Regulation D, 17 C.F.R. § 230.504, J.A. 489-490,

689; that it was "a scheme or plan to evade registration requirements," J.A. 489, 542; and that no one possessed the "investment intent" required under 7 Tex. Admin. Code § 139.19, J.A. 431, 441, 538. Both Mr. Stocker and Mr. Lindberg not only testified as to the meaning of the term underwriter, but also testified that Mr. Offill acted as an underwriter and thus violated the securities registration provisions. J.A. 445-447, 797-798.

Mr. Stocker's and Mr. Lindberg's opinion testimony regarding the legal definition of an "underwriter" under the securities laws and their testimony that Mr. Offill was acting as an "underwriter" is precisely the type of testimony that Rule 701 is designed to keep out of trial. *See Perkins*, 470 F.3d at 158 (noting that testimony "that an investment house engaged in a 'fraudulent and manipulative scheme' involves the use of terms with considerable legal baggage; such testimony nearly always invades the province of the jury"); *see also Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 204 (4th Cir. 2000) (holding that a lay witness's testimony was improper when it involved "the application of the art and science of navigation" to the facts); 3 Salzburg, Federal Rules of Evidence Manual § 701.02[6] ("Because the opinion of a lay witness must be helpful to be admissible, it follows that a lay witness cannot be permitted to draw conclusions of law on the stand.").

Courts have been especially careful to circumscribe lay opinion testimony when it relates to opinions on complex areas of law, which typically have specialized

terms and tortuous regulatory systems such as this one. *See, e.g.*, *United States v. Griffin*, 324 F.3d 330, 348 (5th Cir. 2003) (finding that director of state agency administering housing program could testify about her understanding of state ethics rules and the instruction of employees, but not about her interpretation of the law); *United States v. Espino*, 32 F.3d 253, 257-58 (7th Cir. 1994) (finding district court erred by allowing lay testimony regarding whether defendant was a member of a "conspiracy" because the term "demand[ed] an understanding of the nature and scope of the criminal law."); *Torres v. County of Oakland*, 758 F.2d 147, 149-51 (6th Cir. 1985) (finding trial court erred by allowing lay witness to testify as to whether the defendant had discriminated against the plaintiff).

In light of the above, admission of Mr. Stocker's and Mr. Lindberg's testimony was plainly erroneous. Moreover, as with the testimony of the government's expert witnesses, the harm of the government's lay witness testimony to Mr. Offill is manifest. The alleged co-conspirators testified improperly as to the law and as to the legal consequences of Mr. Offill's conduct. In an action such as this one, where there was no evidence that Mr. Offill participated in the alleged pump and dump in 2004, the improper lay testimony substantially prejudiced him. Furthermore, the cumulative effect of the improper testimony of the government's expert and lay witnesses substantially prejudiced Mr. Offill because the jury was in effect told that they could

not reach any other result than to find Mr. Offill guilty of a conspiracy to commit a pump and dump.

II.  THE DISTRICT COURT ABUSED ITS DISCRETION BY ADMITTING RECORDED CONVERSATIONS IN 2006 UNRELATED TO THE 2004 TRANSACTIONS

A.  Standard of Review

This Court reviews a district court's decision to admit evidence for an abuse of discretion. *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir. 1988). "However, because of the complex and difficult distinction between evidence of character and evidence of, for example, intent or motive, the broad discretion generally given to trial judges in regulating the admissibility of evidence is, under Rule 404(b), more restricted." *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997).

B.  The Subsequent Act Evidence Should Have Been Excluded as Extrinsic and Unreliable, Irrelevant and Prejudicial

Over Mr. Offill's timely objections, the district court improperly admitted evidence relating to Mr. Offill's involvement in the Clearvision transaction that occurred in late 2006 and early 2007 for the purpose of proving Mr. Offill's knowledge and intent in the charged offense from 2004. J.A. 55-66, 135-162, 2397-2413. The government argued some of the evidence was intrinsic to the charged conspiracy, as it related directly to Mr. Offill's knowledge of the 2004 spam

e-mail operation with Emerging Holdings, MassClick, and China Score. J.A. 29, 127. The government further argued that the remaining recordings relating to Clearvision were proper 404(b) evidence because they established Mr. Offill's knowledge of how to conduct a pump and dump. *Id.*

As set forth below, this evidence should have been excluded in whole. First, the evidence concerning the 2004 transactions was not intrinsic evidence. Second, the evidence as a whole was not proper 404(b) material because it was not reliable and was irrelevant in establishing Mr. Offill's knowledge of the pump and dump in 2004 and its probative value was substantially outweighed by its prejudicial effect under Rule 403.

> 1. <u>The Subsequent Act Evidence Was Extrinsic to the Charged Conspiracy</u>

This Court has drawn a distinction between evidence "extrinsic" to the crimes charged, which is analyzed under Rule 404(b), and evidence "intrinsic" to the crimes charged, which is not analyzed under that Rule. *See, e.g.*, *United States v. Chin*, 83 F.3d 83, 87-88 (4th Cir. 1996). Intrinsic acts are acts which are either inextricably intertwined with the charged acts, part of the same single criminal episode that was charged, or necessary preliminaries to the crime charged. *Id.* at 88 (citing *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993)). Intrinsic acts also include acts that either arise out of the same series of transactions as the charged crime or are

necessary to complete the story of the charged crime. *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008).

The spam e-mail evidence relating to the Clearvision transaction from 2006 and 2007 was not part of the charged conspiracy nor was it necessary to complete the story of the charged conspiracy. The government acknowledged that Mr. Offill "made these statements after the charged conspiracy had ended . . . ." J.A. 127. Thus, the evidence was extrinsic to the charged crime and subject to Rule 404(b). Further, the recordings in which Mr. Offill referenced the 2004 transactions were vague and were not admissions.[7] *See United States v. Melia*, 691 F.2d 672, 675 (4th Cir. 1982) (in assessing whether hearsay evidence of prior bad acts was admissible under Rule 404(b), the court found that defendant's descriptions of prior burglaries was vague and thus unreliable). Furthermore, evidence that Mr. Offill referenced spam operations from 2004 in conversations in 2006, does not show that Mr. Offill had knowledge in 2004 of the spamming operations. As argued by the defense in the proceedings below, the government's own investigations of the 2004 transactions were intervening events that would have provided Mr. Offill with the knowledge reflected in the spam e-mail evidence. *See* J.A. 142-143; *see also United States v.*

_____

[7] For instance, in recorded conversations with Mr. Luscko, Mr. Offill stated, "I mean you guys were known for exceptionally aggressive marketing methods." J.A. 1413, 2624. He also asked, "So, you have access to some of the old e-mail groups that Greg [Neu] was using?" J.A. 1447, 2651.

*Jimenez*, 613 F.2d 1373, 1376 (5th Cir. 1980) (looking at intervening events to determine if evidence is admissible).  Accordingly, this evidence was extrinsic and should have been reviewed under Rule 404(b) and, as set forth more fully below, should have been excluded.

2.  The Subsequent Act Evidence Was Improper Under Rule 404(b)

Federal Rule of Evidence 404(b) provides that evidence of prior bad acts may be admissible for purposes other than to prove the character of a person in order to show action in conformity therewith.  *United States vs. Hodge*, 354 F.3d 305, 311 (4th Cir. 2003).  Such purposes include "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  *Id.* at 311-312; *United States vs. Weaver*, 282 F.3d 302, 313 (4th Cir.), *cert denied*, 537 U.S. 847 (2002).  Evidence of prior bad acts is admissible under Rule 404(b) if the evidence is: (1) relevant to an issue other than the general character of the defendant; (2) necessary to prove an element of the charged offense; (3) reliable; and (4) as required by Federal Rule of Evidence 403, its probative value must not be substantially outweighed by its prejudicial effect.  *Hodge,* 354 F.3d at 312; *Weaver*, 282 F.3d at 313; *Queen*, 132 F.3d at 997.  The Fourth Circuit has recognized that subsequent act evidence of motive and intent is often difficult to discern from

character evidence. *Id* at 995-96. Here, as set forth below, the subsequent act evidence should have been excluded.

First, the subsequent acts evidence was not reliable or relevant. Although there is no steadfast rule on how long after a charged crime may the government present subsequent act evidence under Rule 404(b), under the circumstances here, a period of two full years is simply too much time to consider the other acts as evidence relevant or reliable to the charged crime. *See United States v. Hernandez*, 975 F.2d 1035, 1039 (4th Cir. 1992) (stating that other bad acts are inadmissible to prove intent if they are "tenuous and remote in time from the charges in the indictment"). While subsequent conduct may be admissible under Rule 404(b), the length of time between the charged and subsequent acts cannot be "so excessive as to require a conclusion of irrelevance." *Cf. United States v. Hadaway*, 681 F.2d 214, 217-18 (4th Cir. 1982). Importantly here, intervening events negate the probative value of the 2006 and 2007 conversations. Mr. Offill represented Mr. Stocker before the SEC when Mr. Stocker was investigated for several other 2004 transactions. J.A. 1944. As the SEC was investigating substantially similar misconduct, Mr. Offill could have easily learned of Mr. Stocker's criminal scheme during his subsequent representation. Thus, the Clearvision evidence is not reliable for determining whether Mr. Offill was aware of Mr. Stocker's scheme in 2004 and the district court erred in admitting the recorded conversations. Here, the gap between the alleged violations is too long to reliably

infer that Mr. Offill had the same mental state two years earlier. *See United States v. Betts*, 16 F.3d 748, 758 (7th Cir. 1994) (holding that evidence was inadmissible when the other acts occurred eighteen months later), *abrogated on other grounds by United States v. Mills*, 122 F.3d 346 (7th Cir. 1997);*United States v. Cole*, 491 F.2d 1276, 1279 (4th Cir. 1974) (holding that approximately four years was too remote); *United States v. Conner*, 583 F.3d 1011, 1021 (7th Cir. 2009) (finding eleven months was too distant to be intrinsic).

Further, Mr. Offill's role in the Clearvision transaction was categorically different than his role in the charged offense. In the charged offense, the government alleged that Mr. Offill conspired to commit securities registration violations and securities fraud in transactions arranged and managed by Mr. Stocker and that Mr. Offill participated in the securities registration phase of the conspiracy – the indictment did not allege that Mr. Offill participated in the advertisement or the sale phase of the conspiracy. In contrast, the Clearvision evidence presented at trial concerned Mr. Offill's alleged "efforts to manipulate the price of Clearvision stock" and efforts to hire a spammer, which are advertisement and sales activities unrelated to registration issues. Whether Mr. Offill subsequently assumed a central role in a separate and distinct conspiracy has no bearing on whether Mr. Offill knowingly provided false legal opinions in furtherance of the 2004 conspiracy. Evidence of a defendant's dissimilar conduct is not relevant to prove intent or knowledge, even

when it occurs in factually similar scenarios. *United States v. Reinhardt*, 347 F. Supp. 2d 222, 224 (D. Md. 2004). In *Reinhardt*, a defendant was accused of making fraudulent misrepresentations to obtain a lease on a luxury automobile. *Id.* at 223. The government proffered evidence that the defendant had previously orchestrated a fraudulent scheme to make payments on a legally purchased vehicle. *Id.* at 224. Though the facts of the alleged offenses were similar, the court determined that the defendant's role was sufficiently dissimilar to bar its admissibility. *Id.* Accordingly, here, Mr. Offill's alleged subsequent conduct in the Clearvision transaction is so dissimilar to his conduct in the charged conspiracy that it is irrelevant for determining Mr. Offill's knowledge or intent during the 2004 conspiracy. *See Reinhardt*, 347 F. Supp. 2d at 224.

Second, the subsequent act evidence was not necessary to prove the charges in the indictment. Evidence is necessary when it is "an essential part of the crimes on trial, or where it furnishes part of the context of the crime." *Queen*, 132 F.3d at 998. The government argued that this evidence was necessary "to make it clear that [Mr. Offill] understood how to conduct an illegal spamming operation and manipulate securities." J.A. 127 n.10. This evidence, however, only showed that Mr. Offill knew how to conduct an illegal spam campaign in effectuating a pump and dump in 2006, and does nothing to show that Mr. Offill knew in 2004 that Mr. Stocker and others were perpetrating a pump and dump. *See United States v. Hernandez*, 975 F.2d 1035,

1039 (4th Cir. 1992) (refusing to admit evidence that defendant knew how to make crack cocaine because it did not show that defendant intended to engage in crack distribution).

Third, any probative value of the subsequent acts evidence was substantially outweighed by the unfair prejudice resulting from diverting the jury from determining Mr. Offill's innocence or guilt based on his conduct in 2004. In *United States v. Lyles*, 593 F.2d 182, 195 (2d Cir. 1979), the Second Circuit held that tape recorded conversations among co-conspirators in a later, though similar, conspiracy was inadmissible under Rule 403. The Second Circuit stated that evidence of a subsequent conspiracy "obviously carries with it serious potential for prejudice in the form of confusion of issues. Such evidence is especially likely to distort the emphasis at trial away from the crimes covered by the indictment to those not so charged." *Id.* (quoting *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978)).

Here, in a trial concerning the intricacies of the securities laws, the subsequent act evidence created the serious potential of confusing the jury to find guilt based on alleged crimes not charged in the indictment and diverting the jury's attention from Mr. Offill's conduct in 2004, to his conduct two years later in an unrelated transaction. Thus, the probative value of the evidence was outweighed by the danger of undue prejudice and jury confusion. The district court therefore abused its discretion in admitting the subsequent acts evidence at trial.

44

III.    THE DISTRICT COURT'S FAILURE TO INSTRUCT ON MULTIPLE
        CONSPIRACIES WAS REVERSIBLE ERROR

A.    Standard of Review

"Whether jury instructions were properly given is a question of law," *United States v. Morrison*, 991 F.2d 112, 116 (4th Cir. 1993), although this Court reviews for abuse of discretion the district court's decision whether to give a particular instruction, *see United States v. Abbas*, 74 F.3d 506, 513 (4th Cir. 1996). This Court "review[s] an entire charge to determine whether the court adequately instructed the jury on the elements of the offense and the accused's defenses." *United States v. Fowler*, 932 F.2d 306, 317 (4th Cir. 1991). "[A] district court must instruct the jury on the law pertaining to the theory of defense." *Id.* at 316. Ultimately, an appellate court must determine whether, taken as a whole, the instructions fairly state the controlling law. *United States v. Snyder*, 766 F.2d 167, 170 (4th Cir. 1985).

This Court will reverse the district court's decision to refuse to give a proposed jury instruction when the proposed instruction "(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Lewis*, 53 F.3d 29, 32 (4th Cir. 1995).

## B. There Was Sufficient Evidence to Support a Multiple Conspiracy Instruction

Like any other theory of the defense, a defendant is entitled to a multiple-conspiracy instruction if it is supported by the evidence at trial. *United States v. Tipton*, 90 F.3d 861, 883 (4th Cir. 1996). To demonstrate that a single conspiracy exists, the government must present evidence of "'one overall agreement', or 'one general business venture.'" *United States v. Leavis*, 853 F.2d 215, 218 (4th Cir. 1988) (internal citations omitted). Whether the government has proved one or several conspiracies is a question of fact for the jury. *United States v. Harris*, 39 F.3d 1262, 1267 (4th Cir. 1994). In failing to provide a multiple conspiracy instruction, the district court will be held to have erred reversibly if "'the defendants demonstrate that they have been prejudiced by the variance' between the single conspiracy charged in the indictment and the multiple conspiracies proven at trial." *United States v. Kennedy*, 32 F.3d 876, 884 (4th Cir. 1994) (quoting *United States v. Curry*, 977 F.2d 1042, 1052 (7th Cir. 1992)); *United States v. Howard*, 115 F.3d 1151, 1157 (4th Cir. 1997); *see also United States v. Dennis*, 917 F.2d 1031, 1032 (7th Cir. 1990) (failure to give requested instruction on multiple conspiracies where evidence supported it constituted reversible error).

The indictment charged Mr. Offill with conspiring with Mr. Stocker, Mr. Neu, Mr. Luscko, Mr. Medlin, Mr. Brunette, Mr. Motazedi, Mr. Su and Mr. Lindberg to

commit securities registration violations, securities fraud and wire fraud.  J.A. 28-49.

As set forth in the indictment, and in the charge to the jury, the object of the single conspiracy was to unjustly enrich the conspirators through fees and the sale of securities to the general investing public by (1) fraudulently selling unregistered shares of stock of Emerging Holdings, MassClick, China Score, Ecogate, Media International, Vanquish Productions, Auction Mills, AVL Global, and Custom Designed Compressor Systems; and (2) by artificially inflating the market prices and demand for the common stock of Emerging Holdings, Mass Click and China Score. J.A. 2318.

The testimony at trial, however, established that there were multiple conspiracies.  Indeed, the premise of the government's case was that there were three separate and distinct promoters involved with Mr. Stocker:  (1) the Emerging Holdings, MassClick and China Score issuances involving Mr. Neu, Mr. Luscko, and Mr. Stocker; (2) the five issuers affiliated with Mr. Reynolds, Mr. Mullholand and Mr. Stocker; and (3) the issuances of AVL Global Inc. involving Peter and N. Tyler Fisher and Mr. Stocker.  In fact, the SEC filed three separate complaints relating to these issuances.  *See* Complaint, *Securities & Exchange Comm'n v. Luscko*, No. cv-07-2783 (C.D. Cal. Apr. 27, 2007); Complaint, *Securities & Exchange Comm'n*

*v. Offill*, No. 3:07-cv-01643 (N.D. Tex. Sept. 26, 2007); Complaint, *Securities &*

*Exchange Comm'n v. Fisher*, No. 2:07-cv-12552 (E.D. Mich. June 11, 2007).[8]

As set forth in the chart below, each of these issuances involved different

individuals at different times:

| NEU/LUSCKO TRANSACTIONS | | | | |
|---|---|---|---|---|
| ISSUER | DATE OF ISSUE | NUMBER OF SHARES | OFFICER | SECONDARY INVESTOR |
| Emerging Holdings, Inc. | 7/7/2004 | 10,000,000 | Mohammad Motazedi | Luscko & Neu |
| Massclick, Inc. | 7/26/2004 | 10,000,000 | Brian Brunette | Tyson Su |
| China Score, Inc. | 8/5/2004 | 10,000,000 | Henry Zhang | Steve Hasenfus |

| REYNOLDS/MULLHOLAND TRANSACTIONS | | | | |
|---|---|---|---|---|
| ISSUER | DATE OF ISSUE | NUMBER OF SHARES | OFFICER | SECONDARY INVESTOR |
| Ecogate, Inc. | 4/28/2004 | 750,000 | Petr Litomisky | Curtis-Case, Inc. |
| Media International Concepts, Inc. | 5/20/2004 | 750,000 | Michael Marcovsky | Curtis-Case, Inc. |
| Vanquish Productions, Inc. | 6/8/2004 | 500,000 | Cain McKnight | Curtis-Case, Inc. |
| Auction Mills, Inc. | 7/8/2004 | 500,000 | Michael Uskovitch | Curtis-Case, Inc. |
| Auction Mills, Inc. | 7/15/2004 | 200,000 | Michael Uskovitch | Curtis-Case, Inc. |
| Custom Designed Compressor Systems | 9/14/2004 | 8,250,000 | Shelby Ball | Curtis-Case, Inc.; David Stocker IOLTA; ATN Enterprises, LLC; Dissemination Services, LLC; RSMR Capital Group |

---

[8] Although not formally a part of the record, because the SEC's investigations were referenced in testimony, Mr. Offill requests that the Court take judicial notice of them. *See United States v. Vann*, ___ F.3d _____, 2010 WL 3720413, at *6 n.3 (4th Cir. Sept. 24, 2010); Fed. R. Evid. 201(d), (f).

| FISHER TRANSACTIONS | | | | |
|---|---|---|---|---|
| **ISSUER** | **DATE OF ISSUE** | **NUMBER OF SHARES** | **OFFICER** | **SECONDARY INVESTOR** |
| AVL Global, Inc. | 7/28/2004 | 5,000,000 | Peter Fisher | Paul Bawden; John Sadowski; Greg Galente; Don McLaughlin; Terry Moore; Gerry Minor |
| AVL Global, Inc. | 10/5/2004 | 5,000,000 | Peter Fisher | Peter Fisher; Aquila Investments; Virginia Fisher; Harj Manhas; Jim Can; Tearoha Fisher; "others" |

Further, the jury was presented with evidence regarding several other conspiracies: (1) Mr. Stocker testified about fifteen transactions he conducted with Mr. Paloma, J.A. 412-415; (2) Mr. Neu, Mr. Stocker, Mr. Luscko and Mr. Medlin testified about the eDollars deal they conducted with Mr. Paloma, J.A. 467, 879-883, 978, 1156; (3) Mr. Lindberg testified about offerings for National Storm Management, Deep Rock Oil and Gas, and Global Beverage Solutions, in which Mr. Offill was not involved, J.A. 777-778; and (4) Mr. Neu and Mr. Luscko testified about offerings for TKO Holdings and Core Equity Holdings, in which Mr. Offill was also not involved, J.A. 877-878, 1326. Additionally, Mr. Owen testified regarding the Clearvision transaction in 2006 and 2007. J.A. 1543, 1550-1551. Based on this testimony, there was sufficient evidence to establish at least eight separate conspiracies involving different co-conspirators at any given time.

Although Mr. Stocker was a common actor in each of the charged transactions, the evidence established that each of the groups were separate conspiracies. In *Kotteakos v. United States*, 328 U.S. 750 (1946), the defendant was alleged to have conspired to fraudulently procure loans offered to the Federal Housing Administration. *Id.* at 752. The common actor in all of the fraudulent procurements essentially acted as a broker in obtaining the loans with knowledge that they were not going to be used for the purpose for which they were authorized. *Id.* at 753. Many of the defendants had no contact with any of the other defendants, but all participated with the same general purpose (to obtain money by defrauding the government) through one common defendant (the loan broker). *Id.* at 752-756. The Court held that the jury instruction as to one conspiracy between all defendants was reversible error because the evidence showed that there were numerous separate conspiracies, and, therefore, it impermissibly permitted the jury to impute the acts of each defendant to another defendant without proof that one common criminal scheme existed. *Id.* at 769-772.

Similarly here, although Mr. Stocker was involved in each of the charged transactions, the charged conspiracy involved at least three distinct groups. *See also United States v. Dennis*, 917 F.2d 1031, 1032 (7th Cir. 1990) ("A single conspiracy does not exist simply because there are multiple participants dealing with a common central player."). In fact, Mr. Stocker testified that the transactions alleged in the

charged conspiracy involved three separate groups. J.A. 472. Further, the jury heard evidence of numerous other conspiracies not charged in the indictment. As in *Kotteakos*, although the co-conspirators here testified as to a similar general purpose of conducting a pump and dump, the evidence established that this was not a single conspiracy, but rather several distinct conspiracies with Mr. Stocker as the common actor.

Further, based on the evidence presented at trial, the jury could have found that Mr. Offill conspired with Mr. Stocker to violate the securities registration provisions but did not conspire to commit the pump and dump. Throughout trial, the government acknowledged that Mr. Offill did not participate in, and did not profit from, the selling of shares. J.A. 275. Although one need not know or participate in each facet of a conspiracy to be found guilty of a conspiracy, the government still must establish that there was one overall agreement with one overall goal. *United States v. Nunez*, 432 F.3d 573, 578 (4th Cir. 2005); *United States v. Leavis*, 853 F.2d 215, 218 (4th Cir. 1988). The overall goal of the charged conspiracy here was not limited to the issuance of shares. Rather, the ultimate goal of the conspiracy was to inflate those shares and profit from selling those shares. The district court, however, instructed the jury that

> [i]t is not necessary for the Government to prove the defendant unlawfully and knowingly and conspired to commit all these substantive offenses. It is sufficient for

> the government to prove beyond a reasonable doubt that
> the defendant willfully conspired with someone to commit
> one of these offenses or objects.

J.A. 2154. Based on this instruction, and the district court's failure to instruct on multiple conspiracies, the jury could have found Mr. Offill guilty of the charged conspiracy solely based on securities registration violations.

C.     <u>Mr. Offill was Prejudiced by the District Court's Refusal to Instruct the Jury on Multiple Conspiracies</u>

The failure to instruct the jury about multiple conspiracies was reversible error because the error enabled the jury to transfer the admitted guilt of the alleged co-conspirators to Mr. Offill. *See United States v. Kennedy*, 32 F.3d 876, 883 (4th Cir. 1994); *United States v. Johansen*, 56 F.3d 347, 351-52 (2d Cir. 1995) (finding defendant prejudiced by single conspiracy instruction, in part, because there was no "conspiratorial connection" between defendant and his alleged co-conspirator). The district court's failure to give a multiple conspiracy instruction resulted in what this Court has described as a "spillover effect." *See United States v. Ford*, 88 F.3d 1350, 1360 (4th Cir. 1996). The alleged co-conspirators here admitted their participation in numerous separate conspiracies and testified regarding numerous other conspiracies. Because the jury was presented with evidence of multiple conspiracies, they were allowed to attribute evidence of conspiracies not involving Mr. Offill directly to him. In fact, the government asked the jury to do just that when it

compared Mr. Offill's actions to Mr. Lindberg's and Mr. Paloma's actions. J.A. 2034.[9] Consequently, the failure to include the multiple conspiracy instruction resulted in actual prejudice to Mr. Offill and his conviction must be reversed.

## IV. THE SENTENCE IMPOSED BY THE DISTRICT COURT WAS UNREASONABLE

### A. Standard of Review

After *United States v. Booker*, 543 U.S. 220 (2005), this Court reviews federal criminal sentences for reasonableness. That review includes a procedural component, which in turn includes review of the calculations under the U.S. Sentencing Guidelines giving rise to the advisory guideline range. *See Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Diaz-Ibarra*, 522 F.3d 343, 347 (4th Cir. 2008); *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007). The Court reviews a district court's legal conclusions de novo and its factual findings for clear error. *United States v. Thornton*, 554 F.3d 443, 445 (4th Cir. 2009). This Court conducts a *de novo* review of "the district court's interpretation of what constitutes 'loss,' while accepting the calculation of loss absent clear error." *United States v. Allen*, 491 F.3d 178, 193 (4th Cir. 2007).

---

[9] The government argued in closing, "You can also tell that the defendant knew of the illegal conspiracy by again examining the role of the accredited investor. You have to look at who else acted as the accredited investor in these deals. One is Mark Lindberg . . . . The other person . . . is someone called Michael Paloma." J.A. 2202-2203.

B. **The District Court Erred in Calculating the Guidelines Range by Misapplying the Gain Enhancement to Take Into Account David Stocker's Gains**

The largest component of the offense level giving rise to the advisory guideline range applied to Mr. Offill was the amount of money at issue under the fraud guideline, which sets forth potential enhancements to the base offense level premised on the "reasonably foreseeable pecuniary harm that resulted from the offense," U.S.S.G. § 2B1.1(b)(1) & comment. n.3(A)(i)). If such harm "reasonably cannot be determined," the Guidelines direct the court to "use the gain that resulted from the offense as an alternative measure of loss." U.S.S.G. § 2B1.1, comment. (n.3(B)). The government conceded that any losses to victims resulting from the pump and dump reasonably could not be determined and argued that the sentence should be driven by the gain. J.A. 2505. The government then argued that the appropriate amount of gain was over $2.3 million, consisting of sales of stock by Mr. Stocker, sales by an entity controlled by Mr. Offill and the $2,500 payments Mr. Offill received for his legal services in each transaction. *Id.* Based on the government's calculation, the district court selected a Guidelines range of $1,000,000 – a 16-level enhancement. For the reason set forth below, the district court erred by taking into account the gains of Mr. Stocker.

First, neither the fraud guideline, nor the commentary to that guideline, provide that when determining "gain" a court may look beyond the gain of a particular

defendant. *See United States v. McMillan*, 600 F.3d 434 (11th Cir. 2010) (affirming district court's sentencing as to each defendant where calculated gain only included each defendant's salaries).

Second, in attributing Mr. Stocker's gain to Mr. Offill's actual gain, the district court failed to determine the scope of Mr. Offill's agreement and his degree of involvement in the conspiracy. *See* U.S.S.G. § 1B1.3(1)(B). The gain or loss attributable to Mr. Offill is far narrower than the scope of *Pinkerton* liability. *United States v. Hunter*, 323 F.3d 1314 (11th Cir. 2003). In *United States v. Bolden*, 325 F.3d 471 (4th Cir. 2003), this Court held that the fact that a defendant was convicted of conspiracy to commit mail and wire fraud, which included a lease transaction, did not necessarily mandate a finding that losses from that transactions were attributable to defendant. *Id.* at 498; *see also United States v. Collado*, 975 F.2d 985, 998 (3d Cir. 1992) (remanding case to district court to determine whether defendants were liable for entire scope of conspiracy based upon "the scope of the [defendants'] agreement with their co-conspirators, the reasonable foreseeability to them of the transactions, and the degree of their involvement in the conspiracy").

Similarly, in *United States v. Hunter*, the Eleventh Circuit found that a defendant may be held responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy. 323 F.3d at 1319. The court, however, stated that "[t]he limits of sentencing accountability are

not coextensive with the scope of criminal liability." *Id.* Rather, a court must first make "individualized findings concerning the scope of criminal activity undertaken by a particular defendant" and then determine reasonable foreseeability. *Id.* "[T]he fact that the defendant knows about the larger operation, and has agreed to perform a particular act, does not amount to acquiescence in the acts of the criminal enterprise." *Id.* at 1320; *see also United States v. Treadwell*, 593 F.3d 990, 1002 (9th Cir. 2010) (holding that "a district court may not automatically hold an individual defendant responsible for losses attributable to the entire conspiracy, but rather must identify the loss that fell within the scope of the defendant's agreement with his co-conspirators and was reasonably foreseeable to the defendant").

Here, the only conduct attributed to Mr. Offill are the acts related to the securities registration violations. Mr. Offill did not participate in the pump and dump scheme, nor did he profit from that scheme. Further, as highlighted earlier, other than his interactions with Mr. Stocker, Mr. Offill had little to no interaction with any of the alleged co-conspirators. Ultimately, if his conviction is upheld, Mr. Offill should be held accountable only for the approximately $125,000 in payments he received from Mr. Stocker, not any amounts of gain that Mr. Stocker made independently of Mr. Offill's conduct.

C.    Mr. Offill Was Entitled to a Two-Level Reduction in Offense Level  for His Minor Role in the Conspiracy

The district court improperly overruled Mr. Offill's objection to the presentence report's failure to provide a two-level reduction for his minor role in the conspiracy.  J.A. 2530.  Section 3B1.2 states that a defendant who is a minor participant in any criminal activity should receive a two level reduction in his sentence.  U.S.S.G. § 3B1.2(b) (2007).  The commentary to § 3B1.2 states that this guideline is designed for those defendants "less culpable" than others involved in the conspiracy.  U.S.S.G. § 3B1.2(b), comment. (n.5).  Determining a defendant's culpability hinges on the particular facts surrounding the defendant's involvement.  *United States v. White*, 875 F.2d 427, 434 (4th Cir. 1989).  The facts in this case demonstrate Mr. Offill's minor role.

Mr. Offill provided legal advice to Mr. Stocker and acted as the initial accredited investor in several of the transactions.  However, Mr. Offill did not participate in the pump and dump, he never sent spam e-mail, faxes or phone messages, and he did not gain in the sale of the stock.  J.A. 1942-1943.  At most, Mr. Offill's role in the conspiracy was limited to the registration violations.  Although one may argue that Mr. Offill's role was necessary in carrying out the later scheme, that does not preclude a reduction for a minor role.  The role for most participants in a criminal venture can be viewed as necessary, but their role may still be minor.  For

instance, the Sixth Circuit upheld a minor participant departure for an accountant who had a necessary, but minor, role in a bank fraud conspiracy. *See United States v. Ivery*, 999 F.2d 1043, 1045-47 (6th Cir. 1993). The accountant provided advice on how to structure a fraudulent scheme and directed wire transfers; however, because he did not receive the embezzled funds or actively defraud the victims, the district court found that he was less culpable than his codefendants. *Id.* Further, as an example from the Guidelines, a person may participate in a drug distribution scheme by simply transporting or storing drugs, which is a necessary role in drug distribution but still results in a reduction for minor or minimal participation. U.S.S.G. § 3B1.2, comment. (n.3(A)).

D.   The District Court's Sentencing of Mr. Offill Was Dispropor-
     tionate

Based on a correct application of the Guidelines, Mr. Offill's offense level would have been either 25, factoring in a four-level reduction for minimal participant role, or 27, based on a two-level reduction for a minor participant role. This would result in a guideline range of between 57 and 71 months in the first scenario, or between 70 and 87 months in the second. U.S.S.G. Ch. 5, Pt. A (sentencing table).

The district court disproportionately sentenced Mr. Offill to 60 months for the conspiracy count and 96 months for each of the mail and wire fraud counts. J.A. 2551. Even by the government's own account, Mr. Offill did not participate in the

pump and dump.  J.A. 275.  Nevertheless, Mr. Offill was given a greater sentence than all but one other alleged conspirator.  J.A. 2510-2511.  In fact, Mr. Offill received a significantly greater sentence than Mr. Stocker, Mr. Luscko, Mr. Medlin, and others who took active roles in the pump and dump and who made millions of dollars in profit.  *Id.*  Although the district court noted that the alleged co-conspirators pled guilty and cooperated with the government, because of the minor role Mr. Offill played in the purported conspiracy and because of the significantly less gain he earned for the steps he took, a lesser sentence was warranted.

## CONCLUSION

For the foregoing reasons, Mr. Offill requests that the Court reverse his conviction and sentence.

Respectfully submitted this 9th day of November, 2010.

MICHAEL S. NACHMANOFF
Federal Public Defender
for the Eastern District of Virginia

|                          |                                   |
| ------------------------ | --------------------------------- |
|                          | _____s/ Kevin R. Brehm_____  |
| George Kostolampros      | Kevin R. Brehm                    |
| Ronald M. Jacobs         | Assistant Federal Public Defender |
| Stephen H. Swart         | Lead counsel for Appellant        |
| *Pro bono counsel*       | 1650 King Street, Suite 500       |
| Venable LLP              | Alexandria, VA 22314              |
| 575 7th Street, NW       | (703) 600-0800                    |
| Washington, DC 20004     | Kevin_Brehm@fd.org                |
| (202) 344-4000 (main)    |                                   |
| gkostolampros@venable.com |                                  |
| rmjacobs@venable.com     |                                   |
| shswart@venable.com      |                                   |

## **REQUEST FOR ORAL ARGUMENT**

Co-counsel for appellant assert that the issues raised in this brief may be more fully developed through oral argument, and respectfully request the same.

# CERTIFICATE OF COMPLIANCE

1.      This Brief of the Appellant has been prepared using WordPerfect X4 software, Times New Roman font, 14-point proportional type size.

2.      EXCLUSIVE of the corporate disclosure statement; table of contents; table of authorities; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, this brief contains no more than 14,000 words, specifically 13,885 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

|  November 9, 2010  |  s/ Kevin R. Brehm  |
| :---: | :---: |
| Date | Kevin R. Brehm |
| | Assistant Federal Public Defender |

# CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2010, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Edmund P. Power, Esq.
Assistant U.S. Attorney
Office of the U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Ed.Power@usdoj.gov

Patrick F. Stokes, Esq.
U.S. Department of Justice
1400 New York Avenue, NW, 4th Fl.
Washington, DC 20005
Patrick.Stokes2@usdoj.gov

        s/ Kevin R. Brehm
Kevin R. Brehm
Assistant Federal Public Defender
